**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CARMEN N.,[1]

        **Plaintiff,**

                                    **Case No. 3:20-cv-0271**
    v.                             **Magistrate Judge Norah McCann King**

COMMISSIONER OF SOCIAL SECURITY,[2]

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Carmen N. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties*, see Joint Consent of the Parties*, ECF No. 14, on *Plaintiff's Statement of Errors*, ECF No. 9, *Defendant's Memorandum in Opposition*, ECF No. 12, *Plaintiff's Reply*, ECF No. 13, and the *Certified Administrative Record*, ECF No 7. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

## I.    PROCEDURAL HISTORY

On August 6, 2013, Plaintiff filed her applications for benefits, alleging that she has been disabled since July 10, 2013, due to a number of physical and mental impairments.[3] The Commissioner's decision denying those applications was reversed by this Court and the matter was remanded to the Commissioner for further proceedings. *N*[.] *v. Commissioner of Soc. Sec.*, 3:16-cv-459 (S.D. Ohio Feb. 7, 2018). Administrative Law Judge ("the ALJ") Gregory G. Kenyon held another hearing on December 10, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 845-76. In a decision dated February 15, 2019, the ALJ concluded once again that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 10, 2013, Plaintiff's alleged disability onset date, through the date of that decision. R. 823-25. The Appeals Counsel declined review of that decision on May 5, 2020, R. 814-19, and Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

---

[3] References to pages in the Certified Administrative Record, using the pagination reflected in that record, will be cited as "R. __."

evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other co8ntexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted). In addition, "'[w]here substantial evidence supports the Secretary's

determination, it is conclusive, even if substantial evidence also supports the opposite

conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v.

Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d

399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that would have

supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not

be upheld where the SSA fails to follow its own regulations and where that error prejudices a

claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc.

Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d

742, 746 (6th Cir. 2007)).

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for

determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

4

the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

**III.     ALJ DECISION AND APPELLATE ISSUES**

The Plaintiff was 36 years old on July 10, 2013, her alleged disability onset date. R. 834. At step one, the ALJ found that, although Plaintiff had engaged in part-time, temporary light work from 2014 through 2017, Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. R. 825-26.

At step two, the ALJ found that Plaintiff's severe impairments consist of cervical and lumbosacral degenerative disc disease, an anxiety disorder, and depression. R. 826.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work. R. 827. The ALJ also found that this RFC did not permit the performance of any past relevant work. R. 833.

At step five, and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as electronics worker, charge account clerk, and bench assembler—existed in the national economy and could be performed by Plaintiff. R. 834. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 10, 2013, her alleged disability onset date, through the date of the decision. R. 835.

Plaintiff contends that the ALJ improperly separated consideration of Plaintiff's mental

and physical impairments and improperly evaluated the opinions of her treating physician, Terez

Metry, M.D. She asks that the decision of the Commissioner be reversed and remanded with

directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's*

*Statement of Errors,* ECF No. 9, *Plaintiff's Reply Brief*, ECF No. 13. The Acting Commissioner

takes the position that her decision should be affirmed in its entirety because the ALJ's decision

correctly applied the governing legal standards, reflected consideration of the entire record, and

was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in*

*Opposition,* ECF No. 12.

## IV.     RELEVANT EVIDENCE

Plaintiff was involved in a motor vehicle accident in 2011 and has complained of neck

and back pain since that time. An MRI of Plaintiff's cervical spine performed in 2013 was read

as indicating a small central disc protrusion without significant central canal narrowing at C3-4,

a mild diffuse disc bulge at C4-5, a moderate left paracentral soft disc herniation with mild to

moderate compression of the left ventral surface of the cord and moderate to marked left lateral

recess narrowing of the left neural foramen at C5-6, and a small left central disc herniation that

extends to but does not compress the cord at C6-7. R. 615. An MRI of the lumbar spine was read

as showing "little if any abnormality" at L1-2, "very little if any bulge" at L3-4, "slight diffuse

bulge" at L4-5, and disc desiccation at L5-S1 and "broad-based central disc protrusion at least

slightly effacing the thecal sac with mild to moderate central narrowing . There is little posterior

element hypertrophy with mild foraminal stenosis." R. 613. *See also* R. 334. Plaintiff was

referred to a trial of trigger point injections. R. 333.

In April 2014, Mary Ann Jones, Ph.D., performed a consultative psychological evaluation

of Plaintiff at the request of the state agency. R. 545-53. Plaintiff reported that she was not

6

involved in ongoing therapy, nor was she prescribed any psychotropic medications. R. 551. On

clinical examination, Plaintiff was cooperative, her conversation was relevant and coherent, her

mood presented as defeated, resigned and dysphoric, and her affect was sad. R. 548-49. She was

preoccupied with her symptomatology. R. 549. She reported suicidal ideation but no suicidal

gestures. *Id*. She was oriented. *Id.* Her mental calculations were "minimal." R. 551. Dr. Jones

diagnosed dysthymic disorder, pain disorder, and attention-deficit hyperactivity disorder, and

placed Plaintiff's GAF at 53.[4] R. 552. In assessing Plaintiff's abilities and limitations in work-

related activities, Dr. Jones stated, "[T]here may be some limitations in her ability to understand,

remember, and apply instructions in a work setting." R. 552. Although Plaintiff was able to

"track the flow of conversation adequately during the interview process" and showed no

distraction, her reported diagnosis of ADD may result in "some limitations in her ability to

consistently sustain attention and concentration and to maintain appropriate persistence and pace

to perform work tasks." *Id.* Plaintiff's reported crying episodes, dizziness spells, and anger

outbursts "may negatively impact her ability to consistently interact with coworkers and

supervisors…." R. 553. Based on her reported "yell[ing] a lot" and crying episodes, "there do

appear to be some limitations in her ability to cope appropriately with common workplace

pressures." *Id.*

     In February 2015, Plaintiff began treatment for anxiety and depression at Clearing Paths,

at the suggestion of her doctor. *See* R. 1145. On mental status examination, Plaintiff's mood was

depressed and anxious, and her affect was flat. R. 1153 Her memory and attention were

---

[4] A GAF score is a clinician's subjective rating of an individual's overall psychological functioning; a score 51to 60 indicates a moderate impairment in psychological functioning. *Kornecky v. Comm'r of Soc. Sec*., 167 Fed. Appx 496, 503 (6th Cir. 2006).  The Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *DeBoard v. Comm'r of Soc. Sec*., 211 Fed. Appx. 411 (6th Cir. 2006). *See also* 65 Fed.Reg. 50746, 50764-65 (August 21, 2000).

impaired. *Id.* Initial diagnoses were dysthymic disorder and generalized anxiety disorder. R.

1149. Medication was prescribed. R. 1156. Plaintiff reported in July 2015 that her depression

was "better" and that she had begun a part time job, which was "stressful." R. 1159. Other than a

finding of an anxious mood, findings on mental status examination in August 2015 were

unremarkable. R. 1157. Plaintiff was eventually discharged from treatment when she did not

return after August 2015. R. 1137.

Terez Metry, M.D., has been Plaintiff's treating internist since 1999. R. 717. In March

2015, Dr. Metry responded to written interrogatories, R. 716-29, indicating that she has treated

Plaintiff for chronic migraine, ADD, GERD, and chronic back and neck pain. R. 718. Plaintiff's

"chronic pain is causing some depression. . . ," R.  717, although the combined effects of

Plaintiff's physical and mental impairments had not resulted in a "total functional restriction." R.

718. According to Dr. Metry, Plaintiff "remains fairly intact emotionally," and she had no

interpersonal issues. R. 719. Her back pain would "significantly" slow down her productivity and

affects concentration when her pain is severe. *Id*. Plaintiff is able to understand, remember and

carry out simple work instructions, had no history of disabling emotional instability, and could

relate predictably in social situations. R. 720. Her ADD and neck/back injury would prevent her

from maintaining concentration and attention for two hour segments; she could not perform

activities within a schedule, maintain regular attendance, or be punctual within customary

tolerances. R. 721. "Due to pain, attention problem, patient cannot function for a full workday at

a reasonable pace." R. 722 (emphasis in original). Dr. Metry characterized Plaintiff's restriction

of activities of daily living as "moderate," and difficulties in maintaining social functioning and

deficiencies of concentration, persistence or pace as "marked." R. 724.  According to Dr. Metry,

Plaintiff could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently. R.

726. She could stand and work a total of 3-4 hours, for less than one hour at a time, and could sit for a total of 4-6 hours, for 1-2 hours at a time. *Id*. She could never climb, crouch, stoop, or crawl and could occasionally balance and kneel. R. 727. Plaintiff had no fine motor or sensory impairments. Id. She should not be exposed to heights, moving machinery, or temperature extremes. R. 728. Dr. Metry commented, "Mainly heavy work that is limited due to chronic back pain. ADD exacerbates pain intolerance." *Id.* Finally, Dr. Metry stated that Plaintiff has the RFC to perform sedentary work "on a sustained basis (in an eight hour work day)." *Id.*

Findings at a May 2015 office visit include a positive straight leg raising on the right at 60 degrees and decreased sensation in the right arm and hand and in the right ankle. R. 799. Dr. Metry discussed conservative treatment with Plaintiff and ordered MRIs of her cervical and lumbar spine. R. 800.

A May 2015 MRI of the cervical spine was read as showing mild disc desiccaton without significant disc space narrowing and multilevel disc disease. R. 735. An MRI of the lumbar spine was read as showing mild disc bulges and mild bilateral facet arthropathy at L4/L5 and at L5/S1, and a small posterior central protruding disc herniation at L5/S1. R. 736.

The following month, Lynn Robbins, M.D., a neurosurgeon, reviewed those studies, referred Plaintiff to physical therapy, and opined that surgery would "eventually" be required. R. 734.

In August 2015, Dr. Metry reported to the Ohio Department of Job and Family Services that Plaintiff suffers from degenerative joint disease of the spine, resulting in chronic back and neck pain, as well as chronic migraines. R. 1098. Dr. Metry noted decreased range of motion of the cervical and lumbar spine, with tenderness and spasms. R. 1098-99. According to Dr. Metry, Plaintiff could stand/walk for a total of 3-4 hours in a workday, for less than one hour at a time;

9

she could sit for a total of 4-6 hours in a workday, for 1-2 hours at a time. R. 1099. She could lift

and carry up to 10 pounds frequently and up to 20 pounds occasionally. *Id.* She was markedly

limited in her ability to bend and was moderately limited in her ability to push/pull. *Id*. The

doctor opined that Plaintiff was "Employable (sedentary, PT work ok." *Id.* [sic].

Plaintiff underwent trigger point injections and chiropractic intervention and, ultimately,

an anterior cervical diskectomy and fusion at C5-C6 in May 2016, performed by Dr. Robbins. R.

1218-19.

The 2016 cervical fusion, Plaintiff testified at the second administrative hearing, has

reduced, but not eliminated, pain in her neck and her headaches, which still occur two or three

times per week. R. 853-55. She cannot grip with her right hand and she has difficulty picking up

and holding things with that hand. R. 855-56. Her lower back pain is the worst pain and also

involves muscle spasms. R. 865. That pain is constant and radiates into her right leg. R. 858.

Pain injections offer relief for no more than a week, R. 858, and physical therapy made the

condition worse. R. 867. However, surgery has not been recommended. R. 858. Her pain

medication has no side effects. R. 859. She estimates that she can lift ten pounds, can stand or

walk for 30 minutes, and can sit for up to two hours. R. 861-62. She usually spends her time

sitting and watching TV. R. 862. She also suffers from depression, and has trouble concentrating

on things. R. 860. She does not like to be around "a lot of people." *Id.*

## V.     DISCUSSION

Plaintiff complains, first, that the ALJ improperly separated consideration of Plaintiff's

mental and physical impairments. *Plaintiff's Statement of Errors*, ECF No. 9, PageID# 1606-07.

This Court disagrees.

The ALJ exhaustively reviewed the medical evidence and, as noted above, found at step two of the sequential evaluation that Plaintiff's severe impairments included both physical and mental impairments. R. 826. At step three of the sequential evaluation, the ALJ expressly considered whether Plaintiff's impairments "or combination of impairments" met or medically equaled a Listing. *Id.* The ALJ noted that Dr. Metry, Plaintiff's treating internist, "indicated that the claimant's physical symptoms including her chronic pain in combination with her depressive symptoms are a factor in her ability to tolerate pain." R. 832. The ALJ also expressly considered Plaintiff's subjective complaints regarding her physical impairments, her mental impairments, and her pain:

> The claimant alleges that she cannot work due to her back and neck pain, but her medical interventions have been generally conservative, and several sources have found no reason for surgical intervention. Further, the claimant has been able to retain at least some ability to physically function, as she has performed a significant amount of light level work on a part-time basis, as discussed at Finding No. 2. Clinical imaging of the claimant's spine has shown relatively mild findings, and she has been able to achieve some level of relief with chiropractic intervention. The claimant also alleges that she cannot work due to her anxiety and depression, however the record fails to establish that she has attempted any meaningful psychological intervention. She was discharged from therapy due to failure to attend. The residual functional capacity assessment outlined above for a reduced range of sedentary work reasonably accounts for the intensity, persistence, and limiting effects of the claimant's symptoms.

R. 831. It is clear to this Court that the ALJ properly considered the combined effects of all of Plaintiff's impairments, including the functional restriction resulting from the combination of those impairments. The Court will therefore not disturb the ALJ's findings in that regard.

Plaintiff also complains that the ALJ failed to properly consider the opinions of Dr. Metry, Plaintiff's treating internist. *Plaintiff's Statement of Errors*, ECF No. 9, PageID# 1606-07. Again, this Court disagrees.

11

An ALJ must consider all medical opinions in evaluating a claimant's application for benefits. 20 C.F.R. §§ 404.1527(c), 416.927(c). Under the regulations applicable to claims, like Plaintiff's, filed before March 27, 2017,[5] the opinion of a treating provider must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), (4), 416.927(c)(2), (4). The Commissioner must provide "good reasons" for discounting the opinion of a treating provider, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)(citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

In the absence of a controlling treating source opinion, an ALJ must consider the following factors in deciding the weight to be given to any medical opinion: the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, the specialization of the source rendering the opinion, and other factors that "tend to support or contradict the medical opinion." 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). However, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits a claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

---

[5] As noted, Plaintiff filed her claims on August 6, 2013.

The ALJ expressly considered Dr. Metry's treatment notes and all of her opinions regarding Plaintiff's physical impairments, mental impairments, and pain. R. 832-33. The ALJ accorded "[m]oderate weight" to the doctor's physical assessment:

> His [sic] opinion is indicative of an ability to perform work between the light and sedentary level of physical functioning; however, he [sic] specifically indicates that the claimant would be able to perform sedentary work which is consistent with the medical record. On the other hand, he [sic] also submitted a basic medical assessment in which he [sic] opined that the claimant would be able to stand and walk for only 1 hour at a time. The medical record does not contain any evidence of clinical imaging or any indicia of lower extremity radiculopathy, which would warrant a sit/stand option and reduced postural limitations in the claimant's residual functional capacity.

R. 833.

Plaintiff complains that, in making this assessment, the ALJ engaged in an improper interpretation of raw medical data, pointing to the 2013 MRI studies. Plaintiff specifically contends that the ALJ mischaracterized the 2013 MRI of Plaintiff's cervical spine "as mostly mild and normal." *Plaintiff's Statement of Errors*, ECF No. 9, PageID# 1609. To the contrary, however, it was the 2013 MRI of Plaintiff's lumbar spine that the ALJ characterized as "suggestive of only mild findings." R. 828. The ALJ made no such characterization of the MRI of Plaintiff's cervical spine. *See id*. Moreover, the ALJ's characterization of the medical findings regarding the lumbar MRI reflected, not his own lay interpretation of raw medical data, but rather the professional interpretation of that study. *See* R. 613 (showing "little if any abnormality" at L1-2, "very little if any bulge" at L3-4, "slight diffuse bulge" at L4-5, and disc desiccation at L5-S1 and "broad-based central disc protrusion at least slightly effacing the thecal sac with mild to moderate central narrowing . There is little posterior element hypertrophy with mild foraminal stenosis."). The ALJ did not err in this regard.

Plaintiff also complains that the ALJ erred in finding that Dr. Metry's opinion was not supported by his own records and was inconsistent with the medical record; she specifically points to the findings in 2015 of positive straight leg raising on the right at 60 degrees and decreased sensation in the right arm and hand and in the right ankle, and to Dr. Robbins' subsequent neurological assessment in which she indicated that Plaintiff's lumbar spine will "eventually" require surgery. *Plaintiff's Statement of Errors*, ECF No. 9. PageID# 1610. However, the ALJ in fact expressly considered Dr. Robbins' somewhat vague assessment. R. 829. Moreover, the fact that a claimant can point to evidence in the record that would support a finding of disability will not serve to undermine an ALJ's opposite finding that is also supported by substantial evidence. *See Emard,* 953 F.3d at 849; *Blakley*, 581 F.3d at 406; *Key,* 109 F.3d at 273.

> The ALJ gave "[l]ittle weight" to Dr. Metry's mental assessment
>
> because he [sic] is the claimant's primary care physician, and is not a mental health professional. Further, his [sic] assessment that the claimant would experience moderate to marked limitation in mental functioning is grossly inconsistent with her minimal level of mental health treatment.

*Id.* Plaintiff complains that the ALJ erred in this evaluation, arguing first that the ALJ erred in referring to Dr. Metry as "not a mental health professional" because primary care physicians are authorized to identify and treat mental impairments. *Plaintiff's Statement of Errors*, ECF No. 9, PageID# 1607. While that proposition is indisputably true, the governing regulations expressly require an ALJ, in evaluating a medical source opinion, to consider the specialization of the doctor who rendered that opinion. 20 C.F.R. §§ 404.1527(c)(5), 416. 927(c)(5) ("We generally give more weight to the medical opinion of a specialist about a medical issue related to his or her areas of specialty than to the medical opinion of a source who is not a specialist.").

Plaintiff also argues that the ALJ improperly discounted Dr. Metry's mental assessment because Dr. Jones, the consultative examining psychologist, noted that Plaintiff's mood presented as defeated, resigned and dysphoric, and her affect was sad, R. 548-49, and diagnosed dysthymic disorder, pain disorder, and attention-deficit hyperactivity disorder. R. 552. However, as this Court's summary of the record confirms, the ALJ's characterization of Plaintiff's mental health treatment as "minimal" certainly enjoys substantial support in the record. The fact that the record also contains isolated abnormal findings will not serve to undermine the ALJ's evaluation in this regard. *See Emard,* 953 F.3d at 849; *Blakley*, 581 F.3d at 406; *Key,* 109 F.3d at 273.

In short, this Court concludes that the ALJ's assessment of Dr. Metry's opinions conformed to the governing regulation: he provided "good reasons" for discounting those opinions which, as the ALJ noted, were inconsistent with each other, were not entirely supported by her own treatment records, and were not entirely consistent with the record as a whole. *See Gayheart,* 710 F.3d at 376; *Rogers*, 486 F.3d at 242. This Court is therefore without authority to reject that assessment.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to enter final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

   **IT IS SO ORDERED.**


Date:  August 25, 2022                        _____*s/Norah McCann King*_____
                                          NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE